**Oakland Meat Company, Inc., Plaintiff-Appellee, v. Railway Express Agency, Incorporated, Defendant-Appellant.**

**Gen. No. 48,996.**

First District, Second Division.

February 4, 1964.

Slovacek and Galliani, of Chicago, for appellant.

Rudnick & Wolfe, of Chicago (Lester D. Foreman and Perry J. Snyderman, of counsel), for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court.

This is an appeal from a judgment entered in the Municipal Court of Chicago on June 25, 1962. The defendant, Railway Express Agency, moved to dismiss the suit at the close of plaintiff's evidence. The Court denied the motion and entered judgment for the plaintiff, Oakland Meat Company, when the defendant rested without offering evidence.

This case tests the application of a familiar rule of common carrier law. The liability of a carrier for loss of, or injury to, goods in its possession being that of an insurer, no proof of negligence is ordinarily necessary. 13 CJS, Carriers § 254, pp 546, 547. Where the burden is on the plaintiff to prove that the loss of, or injury to, goods was due to the carrier's negligence, proof that the goods were received by the carrier in good condition and delivered by it in bad condition establishes a prima facie case for plaintiff, which the carrier must overcome; and, when the defendant had adduced evidence to rebut the presumption, the burden of proof shifts to the plaintiff. Hartford Live

Stock Ins. Co. v. Railway Exp. Agency, 274 Ill App 585 (1934); House v. Wheelock, 244 Ill App 270 (1927); Annos: 53 ALR 996, 106 ALR 1156.

The defendant-appellant maintains that the complaint of the plaintiff was specific in that it alleged instances in which the defendant operated negligently and that since the plaintiff offered no evidence on these specific charges, there was a variance between the complaint and the proof and no verdict could be entered thereon. Further, the appellant maintains that the evidence introduced by the plaintiff was not competent either to establish that the appellant-carrier received the goods in good condition or that they were spoiled when refused by the consignee.

Three shipments of meat were delivered to the Railway Express Agency at the premises of the Oakland Meat Company on August 24, August 31 and September 21, 1959. All three shipments prior to shipment had been stored in the Columbia Cold Storage Warehouse, a federally inspected warehouse, for a period of less than 45 days. On the day of shipment, each carton of meat was sent to the Oakland Meat Company where it remained for less than two hours, during which time the meat remained in cartons but was further packed in dry ice and an outer packaging. During the time the meat was kept at the Oakland Meat Company, it was refrigerated at approximately 32° Fahrenheit.

When the meat arrived in Kerrville, Texas, the consignee Veteran's Administration Hospital refused to accept delivery of the packages without opening them but upon a determination that they were in a "thawed out" condition.

The plaintiff produced one witness, Mr. Hatoff, the vice-president of plaintiff. The bills of lading under which the meat was shipped were in evidence and their authenticity was stipulated to.

178

Mr. Hatoff testified that he did not personally inspect the meat prior to delivery to the defendant. He stated that plaintiff is a company subject to federal regulation and that there was a federal meat inspector on the premises at all times. He testified that in order to withdraw Veteran's Administration shipments from the Columbia Warehouse it is necessary to apply for shipment and a government inspector at the warehouse will not release the meat unless it measures 10° Fahrenheit or less. The temperature is determined by drilling or driving a nail into the product and inserting a thermometer into the hole. He testified that this procedure was followed with these three shipments.

Mr. Hatoff testified that he observed the shipments when they were received from the Columbia Warehouse and when they were turned over to the Railway Express Agency. He also observed the meat itself and observed the federal inspector test it at the time it was sent to the cold storage warehouse. At the time the shipment was received from the Columbia Warehouse, Mr. Hatoff testified that he observed these shipments being packaged and that he observed the government inspector at that time inspect the packages to determine if they were frozen. The government inspector then stamped the packages accepted and delivered to Mr. Hatoff a government form to that effect.

From the point of destination Mr. Hatoff received notice of the nonacceptance of the packages by the consignee through Mr. Schoenewolf, agent for the defendant in Kerrville, Texas. Mr. Hatoff talked with Mr. Schoenewolf over the phone, received a telegram from him and received a letter from him. Mr. Schoenewolf's letter described that three shipments of fresh meat had been received in a thawed out condition and the problem could be alleviated by re-icing in San Antonio, Texas.

Defendant, particularly, contends that the testimony of Mr. Hatoff is incompetent because he did not personally observe the meat prior to shipment and the letter of Mr. Schoenewolf was inadmissible. We believe that the defendant is in error on both of these points.

██ Mr. Hatoff testified that he had been in the meat business for 15 years, that there was always a federal inspector present and that by law the company complied with the testing procedure. He also stated that the boxes could not be opened after being taken from the cold storage warehouse, but the temperature of the meat could be taken and it was taken in his presence. Mr. Hatoff was certainly competent to testify to what he saw. Beyond this, he could testify to the custom of the federal inspection procedure with which he had become familiar over several years. Gard, Illinois Evidence Manual, Rule 36, p 54 (1963); McCormick on Evidence, Ch 17, § 162, p 343.

██ The letter of Mr. Schoenewolf also was admissible. Appellant tries to disparage the relevancy of the letter by pointing out that it does not make clear which three shipments arrived in a thawed out condition and the statement of values by Mr. Schoenewolf is inaccurate. Mr. Schoenewolf's letter was dated on September 24, 1959, three days after the last of the three shipments was delivered to the carrier in Chicago and very soon after delivery in Kerrville. There are no other refused shipments mentioned to which this letter might be referring. The values of the three shipments varied, one being in excess of $400. Agent Schoenewolf stated that the shipments were "all valued at $400 or better." There is no substantial variance in the values to cast doubt on our belief that he was writing concerning the three shipments in issue here.

Mr. Schoenewolf was clearly the agent of the defendant and his letter is admissible against the Railroad

180

under any test. Appellant cites Hodgerson v. St. Louis, C. & St. P. R. Co., 160 Ill 430, 43 NE 614 (1896), and Baier v. Selke, 211 Ill 512, 71 NE 1074 (1904), in support of its position. These cases stand for the proposition that statements made by an agent are not admissible against the principal unless they were made as a part of the res gestae. The connotation which appellant would like to see imputed to res gestae in this instance is that if the statement occurred after the event in question, it is not a part of the res gestae. The term res gestae is no longer so strictly applied. See Gard, Illinois Evidence Manual, Rule 189, pp 218, 219 (1963); 18 ILP, Evidence, § 172, p 289; McCormick on Evidence, § 244, pp 517, 518. In Burgard v. Mascoutah Lumber Co., 6 Ill App2d, 210, 215, 127 NE2d 464 (1955), the Court stated the rule to be:

> "It is argued that the principle applies, that the admissions of an agent are not competent against the principal. That is a rule of evidence which pertains to admissions concerning acts in the past, it does not apply to statements made by an agent during the process of performing his authorized duties, . . ."

The opinion goes on to note that the latter situation comes under the general rule of agency that the statements of an agent made within the scope of his employment and with the actual or apparent authority of the principal are binding upon the latter, citing 20 Am Jur Evidence, Sec 596. It was further pointed out that this is regarded by some cases as a part of the res gestae rule, that is, the statements are part of the transaction itself.

We believe that in this case the latter might be admissible under either the strict or broad approach. The agency of Mr. Schoenewolf was never denied by the defendant. The goods were delivered to him in

damaged condition, it was his job to discover what to do with them. He sent a telegram for the purpose of securing a direction on disposition and he wrote a letter to his employer and the shipper suggesting how the problem might be avoided in the future. Absent any denial both of these actions were done in the course of his duties with the defendant as a natural action arising out of the specific incident. There is no question here of lack of trustworthiness. To exclude the letter from evidence would be a most technical application of the law.

█ Presuming the competency of the evidence the appellant relies upon House v. Wheelock, 254 Ill App 149 (1929), an action against a carrier to recover for damage to a carload of peaches while in transit, where it appeared that no testimony was offered as to the condition of the shipment by anyone who saw the peaches before shipping and where there was no inspection of the shipment during loading, because of the impossibility of inspecting without removing covers from the containers of the shipment individually. In that case, E. L. Ringhausen was produced to show evidence of condition prior to delivery. He testified that he did none of the picking, packing, sorting or boxing of the fruit, but merely drove the truck and loaded the closed baskets into the car. In that case the witness never really even saw the peaches nor did he examine any fruit or did he see anyone else do so. In this case there is evidence that the goods were frozen when they were delivered to the defendant and thawed out when they arrived at Kerrville. Sufficient unrebutted evidence as to custom in the meat industry was offered to show that the packages did not need to be opened to be accurately measured as frozen. We believe that the plaintiff has established a prima

facie case and that the defendant should have proceeded to offer evidence.

■ The appellant contends that plaintiff's complaint alleges specific charges of negligence and that where there are specific charges the plaintiff must offer evidence on those points to establish a prima facie case. The relevant parts of the complaint stated that it became "the duty and obligation of the defendant to give said shipments the care and protection commensurate with preserving and maintaining the freshness and good order of said merchandise, in addition to choosing the best and most expedient routes to assure the most prompt and expeditious delivery of said merchandise" and "the neglect of the defendant in failing to choose the most direct, expeditious and prompt method of delivery, the shipments in question arrived at their destination in a damaged and deteriorated condition, evidencing unreasonable delay in delivery." The two cases which appellant relies upon to show that the above pleadings are specific in point do not support that view.

In Atlantic Coast Line R. Co. v. Georgia Packing Co., 164 F2d 1 (1947), the complaint specifically alleged that the defendant failed to place the car for delivery until June 28, 1944, more than two days after it should have been delivered and failed to re-ice the car so as to preserve the beef. In Mason v. Chicago & N. W. Ry. Co., 262 Ill App 580 (1931), the statement of claim included the allegation that the car should have arrived for the market of September 29, 1927, in good condition, but did not arrive until September 30, 1927, greatly reduced in weight.

In this case there is no allegation of negligently failing to re-ice the car, rather the complaint alleged that the correct manner of preserving meat for human

183

consumption was within defendant's knowledge. Nor were there allegations that another specific route of transportation would have been more expeditious or allegations that the meat should have arrived at a certain time and did not.

A review of the record has convinced us that plaintiff has established a prima facie case. We, therefore, affirm the judgment of the lower Court.

Judgment affirmed.

BURKE, P. J. and FRIEND, J., concur.